UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON



Eastern District of Kentucky
FILED

FEB 08 2006

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-92-GWU

MICHAEL RELIFORD, PLAINTIFF,

VS. **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

Reliford

    Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.   Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.   Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.   Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7.   Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

2

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

3

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Reliford

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

Reliford

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

6

Reliford

may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Michael Reliford, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of complaints of chronic low back pain diagnosed as degenerative disc disease, complaints of chronic knee pain diagnosed as degenerative joint disease, a history of carpal tunnel syndrome (status post surgery), a depressive disorder in partial remission, and a personality disorder. (Tr. 21). Nevertheless, based in part on information from a vocational expert (VE), the ALJ determined that Mr. Reliford retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 22-5).

After an administrative hearing, the ALJ submitted interrogatories to the VE, asking whether the plaintiff, who the VE identified as a 42-year-old individual with one year of college education and a history of "low level semiskilled work," (Tr. 129-30), could perform any jobs if he was restricted to lifting or carrying no more than 20

Reliford

pounds occasionally, and also had the following non-exertional impairments (Tr. 126). He: (1) could not sit, stand, or walk more than four hours each in combination in an eight-hour day (with appropriate rests); (2) could only occasionally bend, squat, crawl, climb, and reach above shoulder level; (3) could not use his hands for repetitive actions such as simple grasping, pushing, pulling, or fine manipulation; and (4) retained the mental functional capacity for work involving routine, simple, and non-detailed tasks, where public and co-worker contact was casual and infrequent, where supervision was direct and non-confrontational, and where changes in the workforce were infrequent and gradually introduced. (Id.). The VE responded that the plaintiff could perform the job of inspector/checker or examiner at both the light and sedentary levels, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 130).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

One of the plaintiff's allegations of disability concerned depression. (Tr. 74). He testified at the administrative hearing of a fairly long-standing difficulty with depression and anxiety, which was being treated by his family physician, Dr. Phillip Aaron, with Prozac and Elavil. (Tr. 382-4). He had attended the Adanta mental

Reliford

health treatment clinic briefly, but found the staff frustrating to deal with, so he was receiving treatment only from his family doctor. (Tr. 384).

Office notes from Dr. Aaron were submitted, reflecting visits from August, 2000 to January, 2004, and indicating that he had been a patient since at least 1997. (Tr. 137, 169, 322-6). The notes are handwritten and difficult to read, but do reflect a diagnosis of manic depression in September, 2003 and continued depression and panic attacks in October and December of that year. (Tr. 321-323). At some point, thought by the plaintiff's attorney to be the December 18, 2003 office visit, Dr. Aaron completed a mental medical assessment form indicating that the plaintiff had a "fair" (defined as "seriously limited but not precluded") ability to relate to co-workers, deal with the public, use judgment, interact with supervisors, deal with work stresses, function independently, maintain attention and concentration, and understand, remember, and carry out both simple and detailed but not complex job instructions. (Tr. 314, 318-19). A subsequent office note in January, 2004, indicated that medications were helping the depression but the plaintiff would still be "unable to work." (Tr. 326).

The ALJ noted Dr. Aaron's mental restrictions, but described them only as reflecting "fair" abilities without consideration of the definition of this term on the form used. (Tr. 21). The ALJ indicated that these restrictions were compatible with comments of Dr. Kevin Eggerman, a psychiatrist, who performed a consultative

9

Reliford

examination of the plaintiff in October, 2002, and concluded that he had a depressive disorder in partial remission and a personality disorder. (Tr. 241-5). Dr. Eggerman did not complete a formal functional capacity assessment, but did comment at the end of his report that the plaintiff would have a "fair" ability to understand and remember moderately complex instructions, relate to co-workers, persist on tasks, and tolerate work-related stress. (Tr. 245). Dr. Eggerman did not define the term "fair." The ALJ stated that he gave both opinions "substantial weight" and indicated that they were supported by the overall medical evidence. (Tr. 21).

When the definitions used by Dr. Aaron are considered, they are clearly not compatible with the hypothetical question. While Dr. Eggerman may well have intended to indicate a lesser degree of limitation in his report, as suggested by a Global Assessment of Functioning (GAF) score of 60 to 65, which would indicate moderate to mild symptoms per the Diagnostic and Statistical Manual of Mental Disorders (Fourth Edition-Text Revision), p. 34, the fact that the plaintiff's treating physician described much more severe restrictions than the ALJ realized will require a remand for additional consideration. Wilson v. Commissioner of Social Security, 378 F.3d 541, 544 (6th Cir. 2004). This is particularly true in light of the ALJ's additional finding that the plaintiff's depression had not required long-term maintenance on psychotropic medications. (Tr. 23). As previously noted, the plaintiff

10

Reliford

testified that he was taking Prozac at the time of the administrative hearing in February, 2004 (Tr. 385), and records from the Adanta Group indicate that the plaintiff had been prescribed Prozac as early as 2001 (Tr. 237), Dr. Eggerman had noted that the plaintiff was taking Prozac in October, 2002 (Tr. 241) and a consultative physical examiner, Dr. Jeff Reichard, indicated that he was taking Prozac in March, 2004 (Tr. 327). While Dr. Aaron's office notes are difficult to read, an October, 2003 office note does appear to discuss a refill of Prozac as well as a prescription for Elavil (Tr. 322).

The plaintiff also challenges the ALJ's physical findings, which were based on Dr. Reichard's examination, rather than a treating source. Orthopedist Dr. John Vaughan treated the plaintiff between September, 2002 and September, 2003 for lower back pain, knee pain, and neck/shoulder pain. (Tr. 251-4). He completed a functional capacity assessment in February, 2003 limiting Mr. Reliford to lifting a maximum of 15 pounds, standing and walking only two hours in an eight-hour day, no more than 10 minutes without interruption, sitting four to six hours, no more than 15 minutes without interruption, never climbing or crawling, occasionally balancing, stooping, crouching, and kneeling, having limitations on reaching, no pushing or pulling over 10 pounds, and no work around heights, moving machinery, temperature extremes, or vibration. (Tr. 248-9). Dr. Vaughan cited an MRI showing lumbar disc degeneration and arthritis on bilateral knee x-rays. (Id.). He was also aware that the

Reliford

plaintiff had had bilateral carpal tunnel release surgery in May, 2000 (Tr. 134-5), with complaints of continuing pain, and had also obtained an MRI of the cervical spine and right shoulder in August, 2003 showing a rotator cuff tear and cervical spondylosis (Tr. 252).

Dr. Reichard did review prior records at the time of his assessment (Tr. 333-5), but did not specifically indicate why he disagreed with the opinions of the treating source. The ALJ correctly noted that following an injection, Dr. Vaughan found that the plaintiff's shoulder was asymptomatic in September, 2003 (Tr. 251), but Dr. Reichard's subsequent examination had shown a tremor of the hands and upper extremities when seated, audible and palpable right shoulder crepitus, and moderately decreased bilateral grasp strength, among other items (Tr. 327). Thus, it would appear to have been questionable to discount Dr. Vaughn's restrictions on the grounds of subsequent improvement.

The decision will be remanded for further consideration.

This the ___X___ day of February, 2006.

*[signature]*

G. WIX UNTHANK
SENIOR JUDGE